Jerry HARRIS *v.* Charles L. DANIELS,
Director of Labor, and GENUINE PARTS COMPANY

78-41                                    567 S.W. 2d 954

Opinion delivered July 10, 1978
(Division I)

898

*Matthews & Sanders,* by: *Roy Gene Sanders,* for appellant.

*Herrn Northcutt,* for appellees.

JOHN A. FOGLEMAN, Justice. The only question on this appeal is whether there was substantial evidence to support the decision of the Board of Review that appellant Jerry Harris was not entitled to unemployment benefits under the Arkansas Employment Security Act [Ark. Stat. Ann. §§ 81-

1101 — 81-1108, 81-1111 — 81-1121 (Repl. 1976 and Supp. 1977)]. The circuit court held that there was. We agree and affirm.

The claim was filed on April 14, 1977, showing that appellant's last day of work was April 1, 1977. The reason given for separation from the last employment was that appellant quit because he had planned to go into private business but was unable to do so. The response of the employer, Genuine Parts Company, stated that the reason for separation was, "He voluntarily quit, personal reasons." In answer to further questions propounded on an Employment Security Division form as to his voluntarily quitting his employment, he stated as the reason given his employer for quitting was, "I was unable to go in business," and added that he thought it was necessary for him to quit. In answer to a request for a detailed explanation, he stated:

"I was working as a feed salesman when I became interested in going into private business as a parts store operator. I contacted National Automobile Parts Association, which is NAPA, and a tentative agreement was reached with them whereby I would have a franchise for one of their stores in Marshall, Arkansas. I had no experience in this type business so NAPA got me a job at Genuine Parts Company so I could receive training prior to opening my own store. I worked for Genuine Parts Company for three months when it became apparent because of financial reasons that I would not be able to put in my own store. Since my job was only for the purpose of training me to operate my own store, I had no choice but to quit and to start looking for another job. We had an understanding when I went to work with them, I was going to work with them about two or three months and go into private business with them. An employee initiated that I should quit."

Harris elaborated in his testimony. He said that:

He was interested in a store in Marshall, because it sounded like a good opportunity and because he wanted to return to Marshall, his hometown, to live. He did not

want to commence business without any experience, so NAPA agreed to give him a job where he could get two or three months' training. It was contemplated that he would open his store around March 15. He started work on this job around the first of the year. He did not replace anyone, but was just added to the staff at a branch store. There he performed a variety of jobs, which gave him an insight into various facets of store operation. The building he had intended to use for his store never became available. He could not find any vacant store for rent. He was never able to find a suitable building. It was his understanding when he first went to work for NAPA that his employment was not full time but would last only until he could get enough practical experience to open his own store, at which time he would terminate his employment. He became discouraged and discussed the matter with Dave Fowler, general manager, who finally asked him what his plans were, saying that time was drawing near for him to make a decision. He told Fowler the following Monday that he wouldn't be able to go into business. He felt that it was his responsibility to terminate his employment. He understood that the company expected him to terminate his employment if he couldn't go into business on his own. He had left a job when he started the management training program. He had taken a substantial cut in pay, but was willing to do so, because it was a "temporary type arrangement." He felt that he should devote his time to trying to find a job he was better suited for, rather than continuing to work for Genuine Parts Company. He would have continued working for them if they had given him a pay raise.

The Board of Review held that appellant voluntarily quit the training employment which had been arranged for him and which he had pursued with a view toward operating his own franchised store. It found that the claimant changed his mind, elected to abandon his venture as an independent businessman and voluntarily quit his job training program for personal reasons unrelated to any good cause connected with the work within the meaning of Ark. Stat. Ann. § 81-1106 (a).

Appellant's own statements constitute substantial evidence that he voluntarily and without good cause connected with the work, left his last work. In appellate review under Ark. Stat. Ann. § 81-1107 (d) (7), making the findings of the Board of Review, as to the facts, conclusive, if supported by evidence and in the absence of fraud, and confining judicial review to questions of law, we must give the successful party the benefit of every inference that can be drawn from the testimony, viewing it in the light most favorable to the successful party, if there is any rational basis for the board's findings based upon substantial evidence. *Stillman* v. *Unemployment Compensation Board of Review*, 161 Pa. Super. 529, 56 A. 2d 380 (1948); *James* v. *Unemployment Compensation Board of Review*, 6 Pa. Commonwealth 489, 296 A. 2d 288 (1972); *Hinkle* v. *Commonwealth Unemployment Compensation Board of Review*, 9 Pa. Commonwealth 512, 308 A. 2d 173 (1973). Even though there is evidence upon which the Board of Review might have reached a different result, the scope of judicial review is limited to a determination whether the board could reasonably reach its results upon the evidence before it and a reviewing court is not privileged to substitute its findings for those of the board even though the court might reach a different conclusion if it had made the original determination upon the same evidence considered by the board. *Stillman* v. *Unemployment Compensation Board of Review*, supra; *Zielenski* v. *Board of Review*, 85 N.J. Super. 46, 203 A. 2d 635 (1964); *Gatewood* v. *Iowa Iron & Metal Company*, 251 Iowa 639, 102 N.W. 2d 146 (1960). Even if the evidence is undisputed, the drawing of inferences is for the board, not the courts. *Kessler* v. *Industrial Commission*, 27 Wis. 2d 398, 134 N.W. 2d 412 (1965).

These particular rules governing judicial review of the actions of the Board of Review have not heretofore been articulated by this court. The decisions cited, however, are based upon statutory provisions governing judicial review which are similar or virtually identical to those contained in Ark. Stat. Ann. § 81-1107 (d) (7). The pertinent provision as to the effect of the board's decision on judicial review is virtually identical to the provision of our Workers' Compensation Law. Ark. Stat. Ann. § 81-1325 (b) (Repl. 1976). The cited decisions from other jurisdictions state the same rules we

have applied to judicial review of decisions of the Workman's Compensation Commission. See *American Casualty Co. v. Jones*, 224 Ark. 731, 276 S.W. 2d 41; *Fagan Electric Co. v. Green*, 228 Ark. 477, 308 S.W. 2d 810; *McKamie v. Kern-Trimble Drilling Co.*, 229 Ark. 86, 313 S.W. 2d 378; *Oak Lawn Farms v. Payne*, 251 Ark. 674, 474 S.W. 2d 408; *Reynolds Mining Co. v. Raper*, 245 Ark. 749, 434 S.W. 2d 304; *Brower Mfg. Co. v. Willis*, 252 Ark. 755, 480 S.W. 2d 950; *Superior Improvement Co. v. Hignight*, 254 Ark. 328, 493 S.W. 2d 424; *Missouri City Stone Inc. v. Peters*, 257 Ark. 917, 521 S.W. 2d 58. It is appropriate that the rules governing judicial review in workmen's compensation cases, a comparable area of the law, be applied to cases arising under the Employment Security Act. *Stillman v. Unemployment Compensation Board of Review*, supra. We have found it appropriate to do so in another situation. *Reddick v. Scott*, 217 Ark. 38, 228 S.W. 2d 1008. The burden was on the claimant to show good cause. *Toland v. Schneider*, 94 Idaho 556, 494 P. 2d 154 (1972); *Hedrick v. Employment Division*, 25 Or. App. 89, 548 P. 2d 525 (1976).

When we view appellant's testimony in the light most favorable to the board's finding, drawing all reasonable inferences favorable to that holding, we are unable to say that there is no rational basis for it. Our act disqualifies the employee voluntarily leaving work if he voluntarily "without good cause connected with the work" left his employment. Ark. Stat. Ann. § 81-1106 (a). Consequently cases requiring that the cause be attributable to the employer do not apply, as it might if the limitation were simply "without good cause." See *Putnam v. Department of Employment Security*, 103 N.H. 495, 175 A. 2d 519 (1961). What constitutes good cause is usually a question of fact within the province of the Board of Review. *Brinkman v. Catherwood*, 32 A.D. 2d 587, 299 N.Y.S. 2d 350 (1969); *Haynes v. Catherwood*, 30 A.D. 2d 722, 291 N.Y.S. 2d 459 (1968).

"Voluntarily leaving work" in the sense in which the act renders a claimant ineligible for compensation has been said to be the opposite of discharge, dismissal or lay-off by the employer severing relations with the employee. *Department of Labor & Industry v. Unemployment Compensation Board of Review*, 133 Pa. Super. 518, 3 A. 2d 211 (1938). The appropriateness of the reasoning in that case is thus illustrated:

The meaning of the term is easily applied, is of general significance and obviates the necessity of an inquiry or examination into the mental processes of the employe which led up to or brought about his resignation or quitting work of his own motion, the result of which might or might not be deemed voluntary as considered by different persons, from different points of view, and thus be variable and subject to no uniform standard.

In the Pennsylvania act, as in our own, the basic design is to protect the employee from his becoming unemployed through no fault of his own. It was there held that it was not the province of the board of review to explore the reasons or mental processes which led a claimant to give up his employment. The court remarked that few actions are taken in this world without some extraneous constraining or compulsive force, so the application of the term defined on an uncertain basis would be doing violence to its usual and ordinary meaning in the light of the purpose of the act.

Dissatisfaction with the wage paid is not good cause for termination of employment as a matter of law. *Weber* v. *Catherwood*, 32 A.D. 2d 697, 299 N.Y.S. 2d 957 (1969); *Brinkman* v. *Catherwood*, supra; *Haynes* v. *Catherwood*, supra; *Toland* v. *Schneider*, supra. Neither is leaving to seek other employment. *Moore* v. *Doyal*, 240 So. 2d 17 (La. App., 1970). Failure of appellant's plans for self-employment in and of itself did not constitute good cause as a matter of law, particularly when appellant would have continued working if he had been given a pay raise and a part of the reason for his leaving was to devote his time to seeking a job for which he felt he was better suited.

Appellees suggest that appellant should have been disqualified under § 81-1106 (g), which provides for disqualification of one who quit his last job to become self-employed. Regardless of the merits of this argument, the Board of Review made no finding of fact on this question. When this is the case, the courts may not discharge the fact-finding functions of the board. *Hays* v. *Batesville Mfg. Co.*, 251 Ark. 659, 473 S.W. 2d 926; *Reddick* v. *Scott*, supra. Consequently, we do not consider this argument.

Since we find substantial evidence to support the board's action, the judgment is affirmed.

We agree. HARRIS, C.J., and GEORGE ROSE SMITH and HOLT, JJ.