Artist MILNER *v.* Charles L. DANIELS,
Director of Labor, and KROGER COMPANY

CA 80-58                                                    600 S.W. 2d 429
Court of Appeals of Arkansas
Opinion delivered June 11, 1980
Released for publication July 2, 1980

Appellant, *pro se*.

*Herrn Northcutt*, for appellees.

DAVID NEWBERN, Judge. The appellant was denied unemployment compensation benefits pursuant to Ark. Stat. Ann. § 81-1106(b)(1) (Repl. 1976), which disqualifies employees who are discharged from their employment for misconduct. At a hearing before an appeals referee, statements made by the claimant at the time he filed his initial claim with an employment security agency were read into the record. The claimant appeared at the hearing and testified. No representative appeared on behalf of the respondent, Kroger Company.

From the statements introduced and the testimony of the claimant, it appears that during one particular week the claimant was involved in several disputes with management personnel at the grocery store at which he worked. One dispute arose over his coming to work without a name tag. He refused

to go to the back of the store to discuss the matter with a supervisor without witnesses being present. The claimant said he was wary of what might happen or what might later be said by the supervisor about such a private discussion. After witnesses were summoned, he did go to the back of the store where the matter was discussed. The claimant also alleged in his testimony that he refused to accompany the supervisor because she had used racial and profane language in instructing him to go to the back.

The other incident, which occurred some days later, concerned a dispute over the reason the claimant was not scheduled for Sunday work. He and the store manager on duty engaged in a heated discussion of the matter, and the claimant's testimony is that the manager began walking away from him but turned suddenly and grabbed the claimant by the arms whereupon the claimant pushed the manager away. The manager then ordered the claimant to leave the store. The claimant refused to leave until police officers were summoned, and he was instructed by them to leave. The reason given by the claimant for his refusal to leave the store when told to do so by the manager was that he felt the contract between the Company and the union of which he was a member required that before he be temporarily discharged, a union representative be present.

The claimant's explanation of his conduct, although of course and understandably biased, is the only evidence in this record. His explanation makes his conduct appear to be reasonable in response to the situations with which he was confronted. In the latter and more serious incident, he obviously felt entitled to Sunday employment, and felt entitled to the union representation before disciplinary action, such as temporary discharge, could take place. His physical response seems to have been justified by the action of the store manager.

The only reason given by the appeals referee for his decision was that the claimant's refusal to leave the store was "unreasonable." We are not convinced of its unreasonableness, in view of the claimant's undisputed understanding of his union's contract with the Company. Nor

are we willing to equate unreasonableness, even if we could find it in this record, with "misconduct." In *B. J. McAdams, Inc.* v. *Charles L. Daniels, et al.*, 269 Ark. 693, 600 S.W. 2d 418 (Ark. App. 1980), a case we decided June 4, 1980, we quoted with approval the following definition of misconduct found in *Boynton Cab Co.* v. *Neubeck*, 237 Wisc. 249, 296, N.W. 636 (1941):

> . . . the intended meaning of the term "misconduct" . . . is limited to conduct evincing such wilful or wanton disregard of standards of behavior which the employer has a right to expect of his employee, or in clarelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute.

See also, *Williams* v. *District Unemployment Compensation Board*, 383 A. 2d 345 (D.C. 1978); *Barnett* v. *Commonwealth of Penn. Unemployment Compensation Board of Review*, 408 A. 2d 195 (Pa. 1979); *Demech* v. *Board of Review*, 167 N.J. Super. 35, 400 A. 2d 502 (1979).

In its decision approving the determination made by the referee, there is no discussion by the board of review of the facts in this case. That decision simply recites and adopts the referee's findings and conclusions. If we could find substantial evidence of misconduct from the testimony of the claimant, we would affirm although no evidence was presented by the employer. We find no such substantial evidence of misconduct as defined above, and thus we remand this case to the board of review with instructions to honor the claimant's claim.

Reversed and remanded.

PILKINTON, J., dissents.

HOWARD, J., not participating.

JAMES H. PILKINTON, Judge, dissenting. I would affirm this case. I cannot agree with the majority that there is no substantial evidence of misconduct in this record. As I view it, the appellant's own statement to the Agency, together with his testimony before the Appeal Tribunal, contains substantial evidence of misconduct connected with his work within the meaning of the statute.

The fact that the employer, Kroger Company, did not appear for the hearing or contest the claim should not be decisive of the matter. The public has an interest in all unemployment insurance claims. The Employment Security Administration owes a duty to the public to protect the unemployment insurance fund from claims by persons who are disqualified to receive benefits, and this is so whether the employer involved contests the application or not.

Arkansas Statutes § 81-1107(d)(7) states:

". . . In any proceeding under this subsection the findings of the Board of Review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive and the jurisdiction of said Court shall be confined to questions of law."

That has been amplified by case law:

". . . In a proceeding of this kind the Board's findings of fact are conclusive if supported by evidence; which of course means substantial evidence. [Ark. Stats. 1947, § 81-1107 (d)(7)]." *Terry Dairy Products company, Inc.* v. *Cash*, 224 Ark. 576, 577.

Like the decision of any other administrative tribunal, a decision of the Board of Review is reversible on appeal to the courts *only* if found to be arbitrary, capricious, unreasonable, and without substantial evidence to support it or in cases of

fraud or corruption. *City of Fort Smith* v. *Southwestern Bell Tel. Co.*, 274 S.W. 2d 474, 220 Ark. 70, 77-78.

In the recent case of *Harris* v. *Daniels, et al*, 263 Ark. 897, 567 S.W. 2d 954, 957 (1978), the Arkansas Supreme Court stated:

> "In appellate review . . . we must give the successful party the benefit of every inference that can be drawn from the testimony, viewing it in the light most favorable to the successful party, if there is any rational basis for the board's findings based upon substantial evidence. (cases cited). Even though there is evidence upon which the Board of Review might have reached a different result, the scope of judicial review is limited to a determination whether the board could reasonably reach its results upon the evidence before it and a reviewing court is not privileged to substitute its findings for those of the board even though the court might reach a different conclusion if it had made the original determination upon the same evidence considered by the board. (cases cited). Even if the evidence is undisputed, the drawing of inferences is for the board, not the courts. *Kessler* v. *Industrial Commission*, 27 Wis. 2d 398, 134 N.W. 2d 412 (1965)."

Section 5(b)(1) of the Employment Security Law is codified at Ark. Stat. Ann. § 81-1106(b)(1) and reads as follows:

> "81-1106. Disqualification for benefits — For all claims filed on and after July 1, 1978, if so found by the Director, an individual shall be disqualified for benefits:
>
> \* \* \*
>
> (b) Discharged for misconduct. (1) If he is discharged from his last work, for misconduct in connection with the work, such disqualification shall be for eight (8) weeks of unemployment as defined in subsection (i) of this section . . ."

In this case, the Agency, the Employment Security Appeal Tribunal, and the Arkansas Employment Security

Board of Review all found that appellant was not eligible for benefits because he had been discharged from employment with Kroger for misconduct connected with his work within the meaning of the law. Our duty as a court is to determine only if there is substantial evidence in the record to support the decision of the Board of Review. *Harris* v. *Daniels, supra.* We are not to determine what parts of appellant's statements are reasonable and to be believed, or what parts are to be rejected. That is the duty and function of the Board of Review.

Considering the record in the light most favorable to the decision of the Board of Review, as this court must do, I think there is substantial evidence to support the determination made by the Board of Review. Therefore, I respectfully dissent.