NIBCO, INC. *v.* Joe METCALF and
Charles DANIELS, Commissioner of Labor

E 80-81                          613 S.W. 2d 612

Court of Appeals of Arkansas
Opinion delivered April 8, 1981

*Coleman, Gantt, Ramsey & Cox*, by: *Jeff Starling*, for appellant.

*Carolyn Parham*, for appellees.

MELVIN MAYFIELD, Chief Judge. Nibco, Inc., the former employer of Joe Metcalf, has appealed from the decision of the Board of Review allowing Metcalf unemployment benefits. It is Nibco's contention that Metcalf was disqualified to receive benefits because he was discharged for misconduct in connection with his work and, for reversal, Nibco argues that the allowance of benefits is not supported by substantial evidence.

The essential facts are not in dispute. Metcalf was employed by Nibco from July 9, 1975, until February 7, 1980. In August of 1979, he underwent surgery for an ankle injury and was off work until November when his doctor released him and he returned to his regular job of running a machine while standing on his feet. On December 12, 1979, he was transferred to a job which required considerable moving around which included walking on sand. He felt this job was too hard on his ankle and at noon, after going to the office with his foreman, he followed his employer's suggestion and went back to see his doctor. He returned to work the next day with a note from his doctor saying he could do only light duty because of his ankle, but was told by Nibco he could not go to work until he could return to regular duty. Nibco did have light duty available. It was only provided, however, for employees who were hurt on the job and because there was a dispute about Metcalf's injury occurring on the job, Nibco would not give him light duty.

By letter dated January 11, 1980, Nibco's personnel manager sent Metcalf their accident and sickness form for his doctor to fill out and return. The second paragraph of the letter stated:

Joe, as discussed, we need this in order that we may know when to expect you back to work and this is also

necessary if you qualify for accident and sickness payment. Joe, we need you to sign where we have marked in red and have your doctor fill out places marked in blue. As per our conversation you are to return this no later than week ending January 19, 1980.

By letter dated January 18, 1980, Nibco again wrote Metcalf. This letter stated that the physician's statement referred to in the previous letter had not been received and unless Nibco heard from Metcalf before January 24, 1980, he would be considered to have quit voluntarily and his employment would be terminated.

On January 22, 1980, Metcalf's attorney wrote Nibco saying that Metcalf had brought him Nibco's letters of January 11 and 18. The attorney's letter stated that Metcalf felt he could satisfactorily perform the duties of his original job within the "light duty restrictions" placed upon him by the doctor and that Nibco's "refusal" to allow him the opportunity of returning to work and testing his skills was causing him to continue to be totally disabled during this period of time. With reference to the statement that Nibco asked Metcalf to have completed by his doctor, the letter stated: "I have advised Mr. Metcalf against submitting that statement to Dr. Dickson in view of the fact of his contention that his problems are job related, and therefore are not eligible for submission for consideration under a group sickness or accident plan."

On January 23, 1980, Nibco wrote to Metcalf thanking him for the letter from his attorney and for "letting us know that you have no claim under our group accident and sickness plan." The remainder of the letter said:

> The fact still remains that we need to know from your doctor when we can expect you back to work with no restrictions. The last thing we have from your doctor is that you can return to work doing light duty only. Again, we need to know from your doctor approximately how long it will take before we can expect you back without these restrictions.

Now that we know this isn't for an accident and sickness claim, I trust you will get the attached filled out by your doctor and return to us no later than Feb. 2, 1980 in order that we may know what to expect as far as your returning to work.

Please sign where we have checked in red and have your doctor fill out areas checked in blue.

There was no response to this letter and on February 2, 1980, Nibco's personnel manager wrote Metcalf again, saying:

In reference to my letter of January 23, 1980, we still have not received from your doctor a statement giving us approximate date we can expect you back to work with no restrictions. Joe, if I do not hear from you on this matter *before* Thursday, February 7, 1980, I will, as per our company policy, consider you to have quit voluntarily and your employment will be terminated.

If you have any questions please call.

When there was no response to this letter, Nibco terminated Metcalf's employment, and the question before us is whether the failure to furnish the requested information constituted "misconduct" which disqualified Metcalf for unemployment benefits under Ark. Stat. Ann. § 81-1106 (b)(1) (Repl. 1976).

We have been furnished excellent briefs which have reviewed and discussed most of our appellate decisions involving this question.[1] Misconduct as used in section 81-

---

[1] In addition to the cases cited in the body of this opinion, the briefs reviewed and discussed the following decisions involving misconduct: *Parker* v. *Ramada Inn*, 264 Ark. 472, 572 S.W. 2d 409 (1978); *Coker* v. *Daniels*, 267 Ark. 1000, 593 S.W. 2d 59 (Ark. App. 1980); *Hall* v. *Daniels*, 269 Ark. 748, 600 S.W. 2d 436 (Ark. App. 1980); *Frierson* v. *Daniels*, 269 Ark. 724, 600 S.W. 2d 446 (Ark. App. 1980); and *Patterson* v. *Daniels*, 268 Ark. 854, 596 S.W. 2d 355 (Ark. App. 1980), all of which have been designated for publication.

However, citations to *Neal* v. *Daniels*, decided by the Court of Appeals on June 18, 1980, and *Horner* v. *Daniels*, decided by the Court of

1106 (b)(1) has been defined in the cases of *Stagecoach Motel v. Krause*, 267 Ark. 1093, 593 S.W. 2d 495 (Ark. App. 1980); *B. J. McAdams, Inc.* v. *Daniels*, 269 Ark. 693, 600 S.W. 2d 418 (Ark. App. 1980); *Milner* v. *Daniels*, 269 Ark. 762, 600 S.W. 2d 429 (Ark. App. 1980); and *Willis Johnson Co.* v. *Daniels*, 269 Ark. 795, 601 S.W. 2d 890 (Ark. App. 1980). And while the language used is not exactly the same in each case, they say that misconduct involves: (1) disregard of the employer's interests, (2) violation of the employer's rules, (3) disregard of the standards of behavior which the employer has a right to expect of his employees, and (4) disregard of the employee's duties and obligations to his employer.

To constitute misconduct, however, the definitions require more than mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies, ordinary negligence in isolated instances, or good faith error in judgment or discretion. There must be an intentional or deliberate violation, a willful or wanton disregard, or carelessness or negligence of such degree or recurrence as to manifest wrongful intent or evil design.

In *Stagecoach, supra*, the allowance of benefits was upheld where the motel's desk clerk was discharged for failure to collect room rent in advance in keeping with the employer's policy. In *B. J. McAdams, Inc., supra*, the allowance of benefits was upheld where the employee was a truck driver who had three accidents in an eleven-month period and the employer argued there was a pattern or course of conduct showing the employee was "not only negligent but his actions in violating the policies and directives of his employer were willful." And in *Willis Johnson Co., supra*, the allowance of benefits was upheld where the employee was a route salesman who misrepresented his daily stops by falsifying the log he was required to keep.

Appeals on June 25, 1980, are to cases not designated for publication and under the Supreme Court and Court of Appeals Rule 21(4) are not to be cited, quoted, or referred to in any argument or brief presented to any court (except in continuing or relating litigation upon an issue such as res judicata, collateral estoppel or law of the case.)

In these cases, and other cases cited in the briefs, the appellate court simply found that the decision appealed from was supported by substantial evidence and the decision was affirmed. The duty of the appellate court to affirm in that situation is well established. *Terry Dairy Products Company, Inc.* v. *Cash*, 224 Ark. 576, 275 S.W. 2d 12 (1955) and *Harris* v. *Daniels*, 263 Ark. 897, 567 S.W. 2d 954 (1978).

On the other hand, in *Milner, supra*, the denial of benefits was not supported by substantial evidence and was reversed where the misconduct found by the appeals referee and approved by the Board of Review was the employee's refusal to leave the store where he was employed when his manager told him he was not working that day (Sunday) and ordered him to leave. The referee terms this refusal to leave as "unreasonable" and the Court of Appeals said "We are not convinced of its unreasonableness in view o´ the claimant's undisputed understanding of his union's contract with the company. Nor are we willing to equate unreasonableness, even if we could find it in this record, with 'misconduct.' "

In *Hodges* v. *Producers Rice Mill*, 270 Ark. 188, 603 S.W. 2d 479 (1980), denial of benefits was reversed where the employee was discharged for misconduct where he did not return to work until the next Monday after being released by his doctor on Wednesday. The employee testified that he did not return to work on Thursday or Friday because he was experiencing intense and excruciating pain from his hemorrhoid operation and, in order to get relief, was soaking in his bathtub as instructed by his doctor. The court pointed out that this testimony was uncontradicted and held that "The evidence falls far short of showing that claimant ... wilfully failed to return to work on Thursday or Friday. . . ."

And in *St. Vincent Infirmary* v. *Ark. Employment Security Division*, 271 Ark. 654, 609 S.W. 2d 675 (Ark. App. 1980), the court reversed the Board of Review which found that two employees of a day care center for small children were not discharged for misconduct. Holding that there was no substantial evidence to support the board's decision, the court said:

It is undisputed that both appellees left the hospital grounds without permission, and without clocking out; that they were absent during the busy period of the day; the time when they were gone, regardless of length, did not correspond with appellees' normal lunch period; and their absence placed the day care center in violation of regulations concerning the ratio of adult employees to the number of children present.

... Here we have clear instances of misconduct on the part of both discharged employees and an absence of any substantial evidence to show that they were discharged for any reason other than misconduct in connection with their work. The actions on their part, which led to their discharge, were intentional, and displayed a substantial disregard of the employer's interests, and of the employees' duties and obligations. The record contains no evidence to the contrary.

In the case at bar it is undisputed that Metcalf returned to work for light duty and that Nibco told him he could not go to work until he could return for full duty. It is also undisputed that on four different occasions Nibco wrote Metcalf asking for information about when they could expect him back to work without light duty restrictions. Metcalf's attorney responded to the second letter saying he had advised Metcalf not to submit a doctor's statement for the company's group sickness and accident insurance because Metcalf contended the accident was job related (and apparently covered by Workers' Compensation insurance). Nibco's last two letters, however, made it clear that they understood Metcalf was not making a claim under the group sickness and accident insurance plan but that they still needed to know when to expect his return to work without restrictions. Metcalf seems to argue that he had a 10% permanent disability as a result of the injury to his ankle and since Nibco would not let him return to work until he was 100% well, it was impossible to let them know when he expected to return to work. The trouble with that argument is that Metcalf did not so inform Nibco. It is undisputed that Nibco's last two letters were not even answered.

We agree with Nibco's contention that it has a legitimate interest in information concerning when and if injured employees will be able to return to work without light duty restrictions. Certainly such information is needed to properly plan for labor requirements. The intentional or deliberate failure to furnish such information is a willful disregard of the employer's interest and of the standards of behavior which it has a right to expect of its employees. There is no substantial evidence in this case to support a finding that the failure to furnish this information was not intentional or deliberate. The decision of the Board of Review is therefore reversed and the matter remanded for the entry of an order disallowing the claim for unemployment benefits.

COOPER and GLAZE, JJ., dissent.