Darold MAXFIELD  *v.*  DIRECTOR, Arkansas Employment
Security Department

E 03-56                                          129 S.W.3d 298

Court of Appeals of Arkansas
Division I
Opinion delivered November 19, 2003

*Sheila F. Campbell*, for appellant.

*Allan Pruitt*, for appellee.

WENDELL L. GRIFFEN, Judge. This case arises from a decision of the Arkansas Board of Review of the Employment Security Department (ESD), denying unemployment benefits to appellant, Darold L. Maxfield. On appeal, appellant argues that the Board's decision denying unemployment benefits was not supported by substantial evidence and was contrary to the law. We agree; accordingly we reverse and remand so that the Board can enter an order that the unemployment benefits be paid.

Appellant filed a claim for unemployment benefits on September 4, 2002. His last employer was Cintas Corporation (Cintas). The ESD reviewed the case and disqualified appellant, finding that he had been discharged from his job for misconduct in connection with his work on account of dishonesty. Appellant then filed an appeal with the Appeal Tribunal on October 8, 2002. A telephone hearing took place on November 20, 2002. The Appeal Tribunal issued its decision on November 21, 2002, modifying the initial ESD determination inasmuch as appellant had not been discharged for dishonesty, but for misconduct in connection with his work. Benefits were denied for eight weeks. Appellant next filed an appeal with the Board of Review on December 3, 2002. The Board rendered its decision on January 30, 2003, affirming the Appeal Tribunal, holding that appellant had been discharged from his last work for misconduct connected with the work pursuant to Ark. Code Ann. § 11-10-514(a)(1).

· The Appeal Tribunal's hearing officer received the following evidence on November 20, 2002. Randy Lewis, General Manager at Cintas, testified that appellant had been hired in 1999 as a telesales partner, and that Cintas fired appellant on August 30, 2002. Specifically, Lewis testified that appellant called him in the morning of August 19, 2002, to inform him that he had been ordered to military duty that same day as well as Tuesday (August 20) and Friday (August 23) of that week. Lewis stated that appellant said he had not known about the order to report for duty until the Saturday before August 19. Lewis told appellant to fax his orders and that they would complete his leave-of-absence paper-

work on Wednesday, August 21. Appellant faxed the orders as instructed. Lewis also testified that he and appellant completed two leave-of-absence forms on August 21, for the previous Monday and Tuesday as well as for the following Friday.

According to Lewis, appellant worked at Cintas that Wednesday and Thursday and was out again that Friday. The next Monday afternoon, on August 26, 2002, Lewis received the payroll sheets for the sales department in which appellant worked. The employee handing the payroll sheets to Lewis alerted him to the fact that appellant "was out sick two days last week on August 19th and 20th, and he had a vacation day on August 23rd." Lewis investigated the matter and found out that appellant had called the payroll clerk, another employee, on the afternoon of August 21—the same Wednesday Lewis and appellant had filled out the leave-of-absence forms—and that appellant told the payroll clerk that he had been out sick that Monday and Tuesday and that he was taking a vacation day that Friday. The payroll clerk also informed Lewis that appellant had signed the payroll as prepared by the payroll clerk, reflecting the sick days and the vacation day, and sent the payroll to Lewis's office manager.

At that point, Lewis suspended appellant and informed him of a pending investigation. Lewis testified that company policy requires that employees always request sick pay or vacation pay from their direct supervisors—in appellant's case, from Lewis. Lewis considered appellant's act one of dishonesty because he thought appellant had gone "around the system instead of going to your direct supervisor." Lewis also deemed the act to be one of "gross misconduct" and a "policy violation." Lewis stated that appellant knew the policies because he had been a supervisor at their company in the past. Soon after, Cintas terminated appellant's employment.

Lewis further testified that company policy as to military leave required them to prepare leave-of-absence forms. He admitted that employees can choose to use vacation days or sick pay for military leave, but that they had never used sick pay in appellant's case. Appellant had used vacation time for previous military leave. Lewis stressed that employees can request the use of vacation time for military leave, but that they have to do so in advance. He also stated that he would have had no problem if appellant had requested vacation time for the military leave on the Friday of the week in question, but that he had not done so.

Rick Johnson, the human resources manager for Cintas, also testified regarding the company's sick and vacation leave policies. He stated that emergency leave and sick leave were considered the same thing. Such leave could be obtained not just for actual sickness, but also for family emergencies requiring the employee to seek leave. Johnson also stated that they have never denied employees' use of accrued sick or vacation leave for military leave purposes, in compliance with federal laws. Johnson reiterated that all appellant had to do was actually request using sick or vacation leave and they would have granted it. Johnson stressed that appellant failed to do so, even though he knew the policy.

Appellant testified that he had been a telesale partner at Cintas from 1999 to the date of his employment termination. Appellant stated that he informed his supervisor, Lewis, of the emergency duty the Monday morning of the week in question and that he sent him the order by fax. He confirmed that he and Lewis met that Wednesday to complete military-leave-request forms. Concerning vacation requests, he testified that he had to make such requests to be forwarded to his supervisor for approval. However, he also testified that Lewis's office manager directed him to talk directly to the payroll clerk. Appellant testified that he informed the payroll clerk that he wanted to use sick time for the Monday and Tuesday military service of that week, but that he wanted to use vacation time for the Friday military leave.

According to appellant, later the payroll clerk requested that he sign the payroll sheet prepared by her, as part of a "new policy." Appellant stated that he had not been told that he had to take the payroll forms to his supervisor prior to giving them back to the payroll clerk. Appellant then stated that Lewis informed him that he was upset because appellant had used military leave as well as company leave. Appellant emphasized in his testimony that he had a right to use his accrued time for military leave purposes. He denies that he bypassed Lewis as his direct supervisor and that he incorrectly claimed sick and vacation time, because he had met with Lewis as early as he could to fill out leave-of-absence forms and because his "military leave" stated that he could use vacation or sick time to cover that time. Appellant also stated that Cintas did not pay him for military time.

## Analysis

■ Our scope of appellate review in cases such as this is well-settled: On appeal, the findings of the Board of Review are conclusive if

> they are supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. We review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board's findings. Even when there is evidence upon which the Board might have reached a different decision, the scope of judicial review is limited to a determination of whether the Board could reasonably reach its decision upon the evidence before it.

*E.g., Fleming v. Director, Ark. Emp. Sec. Dep't,* 73 Ark. App. 86, 88, 40 S.W.3d 820, 822 (2001); *see also* Ark. Code Ann. § 11-10-529(c)(1) (Repl. 2002) (stating that the Board's findings are conclusive, absent of fraud, if supported by evidence). We further note that the credibility of witnesses and the weight to be accorded their testimony are matters to be resolved by the Board. *Niece v. Director, Ark. Emp. Sec. Dep't,* 67 Ark. App. 109, 992 S.W.2d 169 (1999).

■■ Arkansas Code Annotated section 11-10-514(a)(1) (Repl. 2002) provides that an individual "shall be disqualified for benefits if he is discharged from his last work for misconduct in connection with the work." The employer has the burden of proving misconduct by a preponderance of the evidence. *Grigsby v. Everett,* 8 Ark. App. 188, 649 S.W.2d 404 (1983). Misconduct is defined as: (1) disregard of the employer's interests; (2) violation of the employer's rules; (3) disregard of the standards of behavior which the employer has a right to expect of his employees; (4) disregard of the employee's duties and obligations to the employer. *Nibco, Inc. v. Metcalf,* 1 Ark. App. 114, 613 S.W.2d 612 (1981). There is an element of intent associated with a determination of misconduct on the part of the employee. *Oliver v. Director, Ark. Emp. Sec. Dep't,* 80 Ark. App. 275, 94 S.W.3d 362 (2002). Therefore, mere unsatisfactory conduct, ordinary negligence, or good faith errors in judgment or discretion are not considered misconduct unless they are of such a degree or recurrence as to manifest wrongful intent, evil design, or an intentional disregard of the employer's interests. *Niece v. Director, Ark. Emp. Sec. Dep't, supra.*

Whether an employee's acts are willful or merely the result of unsatisfactory conduct or unintentional failure of performance is a fact question to be decided by the Board. *Id.*

■ In this case, we hold that the Board of Review's decision to deny unemployment benefits based on a finding of appellant's misconduct in connection with the work is unsupported by substantial evidence. The testimony of Lewis and Johnson established that Cintas allows its employees to use accrued vacation or sick time for military leave. They also testified that appellant had used vacation time for military leave in the past. Lewis admitted that employees can request the use of vacation time for military leave. He admitted further that he would not have had any problem with appellant using accrued leave time for his military leave, if he had but requested such use in advance.

The only evidence to the effect that appellant actually had to obtain advance approval from his immediate supervisor came from Lewis and Johnson. Neither of the witnesses were able to produce any written company policy to that effect. Appellant, in his turn, denied knowing of that specific advance approval requirement. While we are mindful of our rule upon appeal to defer to the Board's determination of witness credibility, we nonetheless note that the testimony of Lewis and Johnson demonstrates, at most, that appellant's conduct in signing the payroll record was a mere misjudgment. There is no evidence that appellant acted intentionally, willfully, or with disregard for his employer's interest. Our standard of review requires us to accept as substantial evidence such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Fleming v. Director, Ark. Emp. Sec. Dep't, supra.* We have found no relevant evidence in this case showing that appellant intentionally, willfully, or deceitfully acted with disregard for the employer's interest.

■ Lewis and Johnson testified that employees could use accrued sick leave for military leave absences. Lewis and Johnson admitted that Cintas employees are free to use accrued time for sick leave, vacation time, and non-specific emergency leave. They also admitted that their employees are free to use that accrued time for military leave. Without any showing that Cintas' interest was threatened, and despite the admission by Lewis that appellant made timely request for military leave and was entitled to use his sick leave while on military leave, the Board of Review found that

appellant's conduct constituted an infraction of such a degree as to manifest wrongful intent, evil design, or an intentional disregard of the employer's interests. *See Niece v. Director, Ark. Emp. Sec. Dep't, supra.* Because mere unsatisfactory conduct, ordinary negligence, or good faith errors in judgment or discretion are not considered misconduct, *Niece v. Director, Ark. Emp. Sec. Dep't, supra,* we would have to conclude that a one-time failure to seek advance approval for the use of accrued time—the use of which is the employee's manifest right under company policy—is indeed illustrative of manifest wrongful intent, evil design, or an intentional disregard of the employer's interests.

We certainly cannot now say that non-compliance with existing company rules could never constitute intentional disregard of the employer's interests. However, in the present case the employer failed to offer any, let alone substantial, evidence that would offer a valid basis for finding how appellant disregarded his employer's interests when the employee sought the use of accrued time for military leave, where the employee had the right to do so, and where the employer knew that the employee had military leave, merely because he failed to seek direct, personal advance approval for one such use of accrued time. We are at a loss how any of this constitutes a disregard of the employer's interests.

■ The employer also argues that because appellant at one point had been a supervisor, he knew that employees were required to request the use of accrued time in advance from their direct supervisors. There is no evidence to show us whether such a policy was in existence at the time appellant exercised supervisory functions.

■ Finally, we decide this case mindful that the Soldiers' and Sailors' Civil Relief Act of 1940, 50 App. U.S.C. Ann. §§ 501, *et seq.*, obligates employers to protect the jobs of military reservists called to active duty. The federal law does not give workers a license to defy the interests and workplace rules of their employers. Where a worker attempts to fulfill his military service obligation and notifies the employer of the need to do so, we deem it more than slightly unhelpful that an employer would dismiss the employee for allegedly violating a policy that the employer does not introduce into the documentary record in the worker's unemployment claim. Consequently, we reverse and remand with instructions to enter an order awarding benefits to appellant.

Reversed and remanded.

Neal and Crabtree, JJ., agree.