SLIP OPINION

Cite as 2014 Ark. App. 512

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** E-13-820

| | |
|---|---|
| PAUL SIMS<br><br>APPELLANT<br><br>V.<br><br>DIRECTOR, DEPARTMENT OF<br>WORKFORCE SERVICES, and<br>BISMARCK PUBLIC SCHOOLS<br><br>APPELLEES | **Opinion Delivered** OCTOBER 1, 2014<br><br>APPEAL FROM THE ARKANSAS<br>BOARD OF REVIEW<br>[NO. 2013-BR-01943]<br><br><br>REVERSED AND REMANDED |

### BILL H. WALMSLEY, Judge

Appellant Paul Sims appeals from the Board of Review's decision on July 26, 2013, affirming and adopting the Appeal Tribunal's determination that Sims was discharged from his job at Bismarck Public Schools for misconduct connected with the work.[1] Sims argues that the Board's decision is not supported by substantial evidence. We reverse and remand for an award of benefits.

Sims was hired as the high school counselor in August 1995 and discharged on June 30, 2009. Sims had only one evaluation in his fourteen years with Bismarck Public Schools. The evaluation dated February 27, 2009, shortly before his termination, indicates that Sims was "proficient," and even "distinguished," in all areas of his job with the exception that he had received a score of "basic" with respect to the accuracy of his records.

In February 2008, the Department of Education conducted a standards review at

---

[1]This case has an extensive procedural history; however, it is not relevant to this appeal. *Sims v. Dir., Dep't of Workforce Servs.*, 2013 Ark. App. 241.

Bismarck Public Schools, and the review revealed that one student was permitted to graduate in 2007 without the proper credits. Specifically, the student had 2.5 math credits when the State required three. Sims was advised in a letter from the principal, Jarrod Bray, dated May 27, 2008, of "a transcript issue." Bray informed Sims that, as the high school counselor, it was his job to ensure that all students had the appropriate number and type of credits required by the district and the State. Bray directed Sims to develop "a check system" and to review and update the students' transcripts before the start of school in August to avoid "further issues of this nature."

At the school district's request, there was an audit of the students' transcripts in December 2008. The audit indicated that twenty-one out of fifty-six seniors were not scheduled to take a fourth math credit, which was a new requirement by the State for seniors graduating in 2009.

On April 15, 2009, Superintendent David Hopkins informed Sims that he would recommend that his contract not be renewed, citing the standards review in February 2008 and the audit in December 2008. Hopkins made his recommendation to the school board, which voted unanimously to terminate Sims's contract.

In the employer's statement with the Department of Workforce Services, Sims's duties are described as "duties assigned to a high school counselor." The form indicates that Sims violated "company & State" policy in that, "Seniors must have by State standards a certain number of [credits] in math to be able to graduate. A large number of our Seniors did not have them." The form also states that Sims was made aware of the policy through the

"employer's handbook" and "verbally" and that he was advised of the policy in that he "was notified of these requirements a year prior to this incident."

In a hearing before the Appeal Tribunal, Hopkins testified that it was the counselor's responsibility to ensure that students had the proper number of credits to graduate. Hopkins testified that he expected the counselor to look for changes in the standards but that he looked for such changes as well. He stated that they were supposed to work together as a team but that Sims was not a team player. When asked whether Sims had received notice of the change in requirements, Hopkins stated that Sims had "every opportunity" to get that information. Hopkins also stated that, had Sims attended the in-service workshops for counselors, he would have stayed up-to-date on the State's standards. Hopkins further testified that the change from requiring three math credits to four was "broadcast across the state" and that "[e]verybody knew about it but Mr. Sims, for whatever reason."

Hopkins admitted, however, that the school's 2008–2009 student handbook was incorrect in requiring students to have only three math credits. According to Hopkins, a committee created and reviewed the school's handbook every year and he himself had reviewed it but did not catch the error. Hopkins stated that he did not know whether Sims was on the committee but that, nevertheless, it was Sims's job to make sure the handbook was correct. Hopkins described the student handbook as the final authority on the number of credits required to graduate.

Regarding Sims's failure to ensure that students had the proper credits, Hopkins testified, "And that situation arose not only once, but twice. There was an opportunity given

3

to make a correction; that correction was not made." Hopkins conceded that, while Sims was negligent, he did not think that Sims's failure to perform his job duties was intentional or deliberate.

Sims testified that since he was hired at Bismarck Public Schools in 1995, students were required to have three math credits. Sims complained about the school's outdated computers and stated that, according to his own records on which he relied, the one student referred to in the standards review in early 2008 had the required three math credits to graduate. Sims testified that before he was discharged, he did not receive notice that the number of math credits required by the State had increased to four. Rather, he consulted the school's 2008–2009 handbook in determining the number of required credits. Sims testified that the year he was discharged, as well as the previous year, he was told that he did not need to go to the in-service workshops.

The Appeal Tribunal found that Hopkins credibly testified that the guidance counselor was responsible for ensuring compliance with the State's graduation requirements. The Tribunal found that Sims failed to adequately perform at least a portion of his job duties and concluded that Sims's negligence was of such degree to constitute misconduct.

The Board adopted the Tribunal's decision and made additional findings in affirming the denial of benefits. The Board pointed out that Sims offered no information to show that he attempted "to check the state standards as he had been directed to do" by Bray in the letter dated May 27, 2008. The Board concluded that Sims offered "no credible explanation" as to why he failed to perform his job duties and that such failure was negligence of such degree

SLIP OPINION

or recurrence as to manifest wrongful intent or evil design.

We review the Board's findings in the light most favorable to the prevailing party and affirm the Board's decision if it is supported by substantial evidence. *Price v. Dir., Dep't of Workforce Servs.*, 2013 Ark. App. 205. Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion. *Id*. Even when there is evidence on which the Board might have reached a different decision, the scope of our review is limited to a determination of whether the Board reasonably could have reached the decision it did based on the evidence presented. *Id*.

If so found by the Director of Workforce Services, an individual shall be disqualified for benefits if he is discharged from his last work for misconduct in connection with the work. Ark. Code Ann. § 11–10–514(a)(1) (Supp. 2009). The employer has the burden of proving by a preponderance of the evidence that an employee engaged in misconduct. *Price, supra*. Misconduct in connection with the work includes the violation of any behavioral policies of the employer as distinguished from deficiencies in meeting production standards or accomplishing job duties. Ark. Code Ann. § 11–10–514(a)(3)(A). Misconduct in connection with the work shall not be found for instances of poor performance unless the employer can prove that the poor performance was intentional. Ark. Code Ann. § 11–10–514(a)(4)(A). An individual's repeated act of commission, omission, or negligence despite progressive discipline constitutes sufficient proof of intentional poor performance. Ark. Code Ann. § 11–10–514(a)(4)(B).

This court has held that misconduct includes (1) disregard of the employer's interest,

(2) violation of the employer's rules, (3) disregard of the standards of behavior which the employer has a right to expect of his employees, and (4) disregard of the employee's duties and obligations to his employer. *Nibco, Inc. v. Metcalf*, 1 Ark. App. 114, 613 S.W.2d 612 (1981). The act of misconduct requires "more than mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies, ordinary negligence in isolated instances, or good faith error in judgment or discretion." *Id.* at 118, 613 S.W.2d at 614. There must be an intentional or deliberate violation, a willful or wanton disregard, or carelessness or negligence of such degree or recurrence as to manifest wrongful intent or evil design. *Id.*

Sims argues that neither he, nor the principal, nor the superintendent, nor the handbook committee was aware that the State had changed its standards to require four math credits. Sims further argues that the two mistakes he made were entirely different. He contends that, at most, his failure to learn of the new requirements was negligence but not misconduct.

We agree. The situation in early 2008 involved a mistake with respect to one student's transcript, while the audit in late 2008 revealed that many students did not have the required credits to graduate—not due to errors in the transcripts—but because the State's standards had changed. It was undisputed that Sims was unaware that the State had changed the graduation requirements and that the school's 2008–2009 student handbook did not reflect that change. While the letter from the principal broadly advised Sims to ensure that students had the proper credits to graduate, Sims was not directed to check the State's standards, as found by

6

the Board. It was the employer's burden to show that Sims's negligence constituted misconduct. We cannot say that reasonable minds could conclude that Sims's apparent error in his records and his failure to stay current on graduation requirements amount to misconduct sufficient to deny him unemployment benefits. We hold that there was no substantial evidence to support the Board's determination that Sims's negligence was of such degree or recurrence as to manifest wrongful intent or evil design.

Reversed and remanded.

PITTMAN and HIXSON, JJ., agree.

*Baker, Schulze & Murphy*, by: *J.G. "Gerry" Schulze*, for appellant.

*Phyllis A. Edwards*, for appellee.