

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** E-15-446

|  |  |
|---|---|
| | **Opinion Delivered** December 9, 2015 |
| WENDELL QUESENBERRY<br>APPELLANT | APPEAL FROM THE ARKANSAS<br>BOARD OF REVIEW<br>[NO. 2015-BR-00865] |
| V. | |
| DIRECTOR, DEPARTMENT OF<br>WORKFORCE SERVICES, AND<br>KIMRAD TRANSPORT, LP<br>APPELLEES | REVERSED AND REMANDED |

## BRANDON J. HARRISON, Judge

Wendell Quesenberry appeals the Arkansas Board of Review's finding that he was discharged for misconduct in connection with his job and is therefore disqualified from collecting unemployment benefits. He argues that his actions did not constitute misconduct but were instead the result of ordinary negligence or a good-faith error in judgment. We agree, and we reverse and remand for an award of benefits.

Quesenberry was discharged from his employment as an oil-truck driver at Kimrad Transport after he was involved in an accident in a company truck that damaged the truck. Quesenberry applied for unemployment insurance benefits, but the Arkansas Department of Workforce Services (the Department) concluded that he was disqualified from receiving benefits due to misconduct because he damaged company property.

Quesenberry appealed to the Arkansas Appeal Tribunal, which held a hearing on 7 April 2015. Steve Smart, the human-resources director for Kimrad, testified that Quesenberry was employed as a full-time driver with the company from 28 October 2014 until 29 January 2015. Smart stated that Quesenberry was discharged for negligence "and other reasons of a preventable DOT reportable accident." Smart also said that Quesenberry had violated the company's safety policy by having a preventable accident. Smart explained that the accident occurred on 28 January 2015 at 11:15 p.m. and described the accident this way: "He was going northbound on CR 468 across Craig Road. His GPS told him that he needed to turn west on Craig Road, so he attempted to back straight up 468 to make his left turn and he instead backed into the ditch and overturned the truck." Smart confirmed that Quesenberry had not had any other accidents.

Joe Greene, the safety director for Kimrad, testified that Quesenberry had violated the company's safety policy that says "no employee can remain employed if he has a DOT reportable accident." Greene explained that the company was required to report this accident to the Department of Transportation because it involved a wrecker and a citation issued to the driver (Quesenberry was given a citation for "illegal backing."). He also stated that Quesenberry had no other accidents but that he had to be discharged because he was no longer insurable. According to Greene, the company's policy states that if a driver has one accident that is reportable to DOT, the person must be released, and if a person has had a DOT reportable accident, that person cannot be hired. Greene said that

he informed Quesenberry of this policy after the accident and that he did not know if Quesenberry had been informed of the policy before that.

Quesenberry testified that at the time he was hired, he was not advised that he would be terminated in the event of an accident. He also said that his job was to haul crude oil and that he made four or five trips per day between the well and the drop-off point. He explained the accident this way:

> [W]hen I went through the intersection the GPS was sending me through, I decided that I needed to just take the left on the paved road. So I went to back up—got out of the truck—went to back up. . . . [T]here was a stop sign kind of laid over at a 45-degree angle, and I was kind of watching that in my right mirror. And, when I come up to the edge of the pavement, I saw it dropping off. I stopped and then the surge just pulled it right back down in there. And then, all of a sudden it was just, five seconds later it was flipping up in the air and laid over.

He explained that he decided to take the paved road, which added three miles to his trip, because he "wasn't aware of the road, if it had anything that I may need to cross with a full load or not." Quesenberry testified that there were no backup lights on the truck, so it was difficult for him to see; he did not realize that the stop sign he was using as a guide was farther from the road than a normal stop sign would be. He stated that he did not intend to turn the truck over and that it was an accident.

On 9 April 2015, the Appeal Tribunal reversed the Department's denial of benefits, finding that Kimrad had not shown that Quesenberry acted in willful disregard of its interests. Kimrad appealed to the Board of Review (the Board), which held its own hearing on 23 June 2015. At that hearing, Greene testified that the surge that Quesenberry said caused the accident is something that every driver deals with, and he agreed that Quesenberry "simply wasn't paying good enough attention" and that the

accident was preventable. Greene said that Quesenberry should have gotten out and walked around the trailer as a precaution and that Quesenberry had admitted he did not do so. On cross-examination, Greene stated that the company's policy regarding preventable DOT accidents was "not a written policy that Mr. Quesenberry would have signed."

Quesenberry testified that he "[couldn't] remember for sure" if he got out of the truck to inspect his surroundings before backing up the truck. He explained that when the truck got to the edge of the culvert, the right rear wheel slid into the ditch, and that was when the surge happened.

In a June 2015 decision, the Board reversed the Appeal Tribunal's decision, finding that Quesenberry was discharged from last work for misconduct in connection with the work. The Board explained:

> The facts that the claimant received a citation for "illegal backing" and that no other vehicles were involved indicate that he was at fault in causing the accident. . . . The claimant testified that he cannot recall whether he first exited the vehicle or not. It is more likely than not that the claimant did not exit and circle his vehicle prior to backing into the intersection. The claimant further argues that the "surge" of the crude oil in the trailer caused the accident. However, the claimant was aware of the liquid nature of his load, and any surge that occurred would have been caused by the manner in which he operated the vehicle. The claimant's illegal backing and his failure to first exit the vehicle and survey his surroundings before backing into the intersection are what caused the accident, which involved the employer's vehicle rolling over. The Board finds that the claimant's negligent action arose to such a level as to constitute misconduct under Ark. Code Ann. § 11-10-514.

Quesenberry timely appealed to this court.

We review the Board's findings in the light most favorable to the prevailing party and affirm the Board's decision if it is supported by substantial evidence. *Rodriguez v. Dir.*,

2013 Ark. App. 361. Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* Even when there is evidence upon which the Board might have reached a different decision, the scope of our review is limited to a determination of whether the Board reasonably could have reached the decision that it did based upon the evidence before it. *Id.* Issues of credibility of witnesses and weight to be afforded their testimony are matters for the Board to determine. *Ballard v. Dir.*, 2012 Ark. App. 371.

A person shall be disqualified from receiving unemployment benefits if it is determined that the person was discharged from his or her last work on the basis of misconduct in connection with the work. Ark. Code Ann. § 11-10-514(a)(1) (Supp. 2015). The employer has the burden of proving by a preponderance of the evidence that an employee engaged in misconduct. *Grigsby v. Everett*, 8 Ark. App. 188, 649 S.W.2d 404 (1983). Misconduct, as that term is used in the statute, includes "(1) disregard of the employer's interests, (2) violation of the employer's rules, (3) disregard of the standards of behavior which the employer has a right to expect of his employees, and (4) disregard of the employee's duties and obligations to his employer." *Garrett v. Dir.*, 2014 Ark. App. 50, at 6 (quoting *Nibco, Inc. v. Metcalf*, 1 Ark. App. 114, 118, 613 S.W.2d 612, 614 (1981)). The act of misconduct requires "more than mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies, ordinary negligence in isolated instances, or good faith error in judgment or discretion." *Nibco*, 1 Ark. App. at 118, 613 S.W.2d at 614. To that end, "[t]here must be an intentional or deliberate violation, a willful or wanton disregard, or carelessness or

negligence of such degree or recurrence as to manifest wrongful intent or evil design" to constitute misconduct. *Id.*, 613 S.W.2d at 614.

We hold that the Board's decision is not supported by substantial evidence. While the employer may have acted reasonably in deciding to terminate Quesenberry from employment as an oil-truck driver, there is no substantial evidence to support a determination by the Board that his conduct amounted to an intentional disregard of his employer's interest or manifested wrongful intent or evil design. So we reverse and remand this case for an award of benefits.

Reversed and remanded.

VIRDEN and WHITEAKER, JJ., agree.

 *Dale Ramsey Law Firm PLLC*, by: *Dale K. Ramsey*, for appellant.

*Phyllis Edwards*, Associate General Counsel, for appellee.