## Willie L. PETERSON v.
## DIRECTOR, Arkansas Employment Security Department

E 04-336                                           203 S.W.3d 655

### Court of Appeals of Arkansas
### Opinion delivered February 16, 2005

*Willie Peterson, pro se.*

*Phyllis Edwards*, for appellee.

DAVID M. GLOVER, Judge. Appellant, Willie Peterson, received an overpayment of benefits in the amount of $3,105 from the Arkansas Employment Security Department. The overpayment occurred because the department concluded that he had been discharged from his last work for reasons that did not constitute misconduct connected with the work. The Appeal Tribunal, however, reversed that decision. The Board of Review affirmed, and the decision was not appealed. Accordingly, appellant was paid benefits to which he was not entitled, through no fault of his own, for the period September 20, 2003, through November 15, 2003.

In a hearing conducted by telephone on July 7, 2004, the Appeal Tribunal addressed the issue of whether appellant's financial situation would allow him to be able to repay the overpayment. The Appeal Tribunal asked appellant a series of questions under oath and subsequently issued its opinion, concluding that requiring appellant to repay would not violate the principles of equity and good conscience. The Board of Review affirmed. Appellant contends in this appeal that the Board's decision is not

supported by the evidence because his monthly expenses exceed his monthly income, and he is not financially able to repay the money. We agree, and therefore we reverse and dismiss the Board's decision.

On appeal, the Board of Review's findings of fact are conclusive if they are supported by substantial evidence. *Trigg v. Dir. Emp. Sec. Dep't*, 72 Ark. App. 266, 34 S.W.3d 783 (2000). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* Our review is limited to a determination of whether the Board could reasonably reach its decision upon the evidence before it. *Id.* We review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board's findings. *Id.* Even when there is evidence upon which the Board might have reached a different decision, the scope of judicial review is limited to a determination of whether the Board could reasonably reach its decision upon the evidence before it. *Id.*

If a person receives unemployment benefits to which he or she is not entitled by reasons other than fraud, willful misrepresentation, or willful nondisclosure of facts, the person shall be liable for repayment of that amount to the fund. Ark. Code Ann. § 11-10-532(b)(1)(A) (Repl. 2002). In lieu of requiring the repayment, however, the director may recover the amount by deduction of any future benefits payable to the person "unless the director finds that the overpayment was received without fault on the part of the recipient and that its recovery would be *against equity and good conscience.*" Ark. Code Ann. § 11-10-532(b)(1)(B) (Repl. 2002) (emphasis added).

At the telephonic hearing with the Appeal Tribunal on July 7, 2004, the hearing officer asked appellant a series of questions. Appellant testified that he was married and that he had eight children, three of whom lived with him (ages five, nine, and ten). He explained that he paid about $350 a month for the five children that lived outside the home, but that he was not under a court order to do so. He stated that he had been employed for about five months at the time of the hearing, and that he made thirteen dollars an hour, following a recent raise. He said that his hours per week varied from forty to fifty and that he had no other source of income. He stated that his wife was going to school to become a dental hygienist; that she was not employed; that he was not sure but that she might have gotten a grant to pay for her tuition; and that she had not started to pay anything back yet.

Appellant reported that he had $2000 in his savings account and probably $100 in his checking account. He said that he had no stocks or bonds or rental property. He stated that his monthly mortgage payment was $651. He estimated that monthly he paid approximately $80 for gas, $66 for water, $80 to $130 for electricity, $54 for telephone, and $99 to $240 for cell phone. For groceries, he said that he paid $120 to $240 a month, and that monthly payments for vehicles included $488 for his vehicle, $200 for his wife's vehicle, and $200 for insurance.

Appellant estimated that $150 a month was spent on children's clothing and $40 a week went for child care. He said that medicine amounted to approximately $20 a month, gasoline was $200 a month, and health insurance, which was deducted from his paycheck, was $39 a week. In addition, he said that he owes approximately $1500 in hospital/medical bills and that he pays about $100 to $150 a month on them. He also said that Southwestern Bell claims that he owes them $1200 and that they were threatening to sue him to recover it.

In its decision, the Appeal Tribunal made the following pertinent statements:

> FINDINGS OF FACT: . . . The claimant is currently married and employed. The claimant earns approximately $1,800 [sic] per month. His wife is not employed, but is a student receiving some form of financial aid. The claimant's current monthly expenses are $2,500. The claimant has approximately $2,000 in a savings account.
>
> . . .
>
> REASONING AND CONCLUSIONS: The claimant received $3,105 in unemployment benefits to which he was not entitled. As the overpayment was the result of an Appeal Tribunal reversal he was not at fault in causing the overpayment. The claimant's current monthly expenses appear to exceed his monthly income, *however, the claimant has not presented sufficient evidence concerning his wife's ability to contribute to the monthly expenses of the home. The claimant's testimony concerning his wife indicates she is receiving some type of financial aid. As such, requiring repayment would not violate the principles of equity and good conscience.* Therefore, the claimant is liable to repay the fund.

(Emphasis added.) The Board of Review affirmed the Appeal Tribunal, making the following additional pertinent statements:

> [Appellant] testified that his weekly income is $520. This figure appears to be based on a forty-hour week. It is not clear from his testimony whether a forty-hour week is typical or an exception. His monthly income based on a forty-hour week is about $2,080. However, the claimant's testimony indicates that his expenses total around $2,700 per month. ... Moreover, the claimant testified that his wife is attending school. It is not clear from the testimony how she is paying tuition and other school expenses. The claimant's testimony indicated that she is not working, although at one point in his testimony he indicated she was working for a dentist before correcting himself to say she had worked for a dentist but was not currently working. He testified that she is learning to be a dental hygienist. He indicated at one point that she had to repay the costs of her education when it was completed. This testimony indicates that she may have obtained some sort of loan. However, the claimant also gave testimony indicating that he does not know if the dentist is providing financial assistance. He also indicated that she might be receiving unemployment benefits. *The evidence indicates that the claimant's wife is receiving some sort of financial assistance. The claimant has not provided testimony to show the amount and extent of assistance. The claimant has not shown that the household monthly expenses exceed the household monthly income.* Thus, the claimant has not shown that the principles of equity and good conscience are violated by requiring repayment of the overpayment.

(Emphasis added.) Clearly, the financial assistance that appellant's wife was receiving in order to attend school was a critical factor in these decisions.

The following colloquy occurred between appellant and the hearing officer regarding appellant's wife:

> H OFFICER:  Is your wife employed?
>
> CLAIMANT:  No.
>
> H OFFICER:  Does she receive any income?
>
> CLAIMANT:  She just goes to school.
>
> H OFFICER:  Did she receive student loans or grants?
>
> CLAIMANT:  No.

H Officer: Are you paying for her tuition?

Claimant: To be honest, I don't know how, she went for a dental hygienist. I don't know if she had to pay anything or not but I think she does.

H Officer: You say she is working for a dental hygienist?

Claimant: She went to school for it, she going like . . .

H Officer: She is going to school for a dental hygienist's job.

Claimant: Right, right.

H Officer: But she is not working anywhere now?

Claimant: No, she hasn't worked in over eight months.

H Officer: How is she paying for her tuition?

Claimant: She don't have to pay it yet, she haven't started to pay anything yet. I think she might have gotten a grant, I don't know if they gave her anything or not.

. . . .

H Officer: Do you have any other source of income that we haven't talked about?

Claimant: No.

H Officer: Does your wife have any source of income that we haven't talked about?

Claimant: No.

H Officer: Do you know how much she received for her student loans, grants or anything like that?

Claimant: I have no knowledge of any of that, what she going to school for but all I remember she was telling me that she would probably start paying it back when she finish.

H OFFICER: So she is receiving some student loan?

CLAIMANT: No, she didn't get no money.

H OFFICER: What is she going to have to pay back when she gets finished?

CLAIMANT: I don't know, I guess for her books and stuff that they probably give them.

H OFFICER: Okay.

CLAIMANT: Wait a minute, she was, and I don't even know if she is still getting it, she was getting unemployment. She was getting $100 a week from her previous job. She was getting $100 a week.

H OFFICER: Do you know whether she is still receiving that right now?

CLAIMANT: No, I really do not, because she was going thru her x-terms and I don't know if that affected her or not.

Even viewing the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board's findings, we are left with the conclusion that the Board could not reasonably reach its decision based upon the evidence before it. The testimony about the wife's sources of funds was clear in these respects: (1) she was not employed, (2) she had not been employed for eight months, (3) she was attending school, (4) whatever financial assistance she was receiving in order to attend school was going toward that purpose and would have to be repaid at some point, (5) the household expenses exceeded the household income, even if appellant's wife was receiving $100 a week in unemployment benefits. Therefore, we find no substantial evidence to support the Board's decision that requiring appellant to repay the money would not violate the principles of equity and good conscience.

Reversed and dismissed.

HART and NEAL, JJ., agree.