

Cite as 2013 Ark. App. 554

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** E-13-217

| | |
|---|---|
| JAMESIA STEPHNEY<br><div align="right">APPELLANT</div> | **Opinion Delivered** October 2, 2013 |
| V. | APPEAL FROM THE ARKANSAS BOARD OF REVIEW<br>[NO. 2013-BR-00072] |
| DIRECTOR, DEPARTMENT OF WORKFORCE SERVICES, and ARKANSAS DEPARTMENT OF CORRECTION<br><div align="right">APPELLEES</div> | REVERSED AND REMANDED |

## KENNETH S. HIXSON, Judge

Appellant Jamesia Stephney worked as a correctional officer for appellee Arkansas Department of Correction from April 25, 2011, until her discharge on August 28, 2012. Jamesia was awarded unemployment benefits by the Appeal Tribunal. However, the Board of Review reversed the Appeal Tribunal's decision, finding that Jamesia was disqualified for benefits because she was discharged for misconduct connected with the work. Jamesia now appeals, and we reverse the Board's decision and remand for an award of benefits.

Arkansas Code Annotated section 11-10-514(a) (Repl. 2012) provides that an individual shall be disqualified for benefits if she is discharged from her last work for misconduct in connection with the work. The employer has the burden of proving misconduct by a preponderance of the evidence. *Maxfield v. Dir., Ark. Emp't Sec. Dep't*, 84 Ark. App. 48, 129 S.W.3d 298 (2003). We will affirm a decision of the Board of Review if

it is supported by substantial evidence, and our review is limited to whether the Board could reasonably reach its decision based on the evidence before it. *Peterson v. Dir., Ark. Emp't Sec. Dep't*, 90 Ark. App. 19, 203 S.W.3d 655 (2005).

Jamesia's employer has a policy prohibiting trafficking and trading with inmates. The employer's warden had heard that Jemesia was involved in acts of accepting money from inmates. Based on this information, a deputy warden arranged for an inmate to give Jamesia $150 in cash that was marked with invisible florescent detection powder. The inmate reported that he went into Jamesia's workstation and put the $150 in her back pocket.

Jamesia was removed from her post and asked whether she had accepted money from an inmate, and she replied that she had not. Then Jamesia was directed to place her hands in a black-light box, and the human-resources manager stated that some florescent residue was detected on Jamesia's hands. Jamesia requested to see the black-light findings, but her employer refused. Jamesia was then strip-searched, but no money was found. A search of Jamesia's workstation was conducted, but no money was recovered there either. After that, a voice-stress exam was administered, and Jamesia was reportedly deceptive when she denied taking money from an inmate. However, Jamesia requested and was denied a copy of the exam's findings. Jamesia was subjected to a second strip search, but again no money was found.

Jamesia was fired based on her employer's allegation that she had accepted money. At the hearing, Jamesia testified that she had never taken money from an inmate.

SLIP OPINION

In this case the Board found that Jamesia was discharged for misconduct because she took money from an inmate, thereby intentionally violating a policy of her employer. However, we conclude that this finding was not supported by substantial evidence. Although the employer arranged for an informant to give Jamesia premarked money, that money was never found despite two strip searches and a search of Jamesia's workstation. When confronted with the accusation that florescent residue was seen on her hands, Jamesia continued to deny taking any money, and her employer refused to show her the black–light test results. And while Jamesia allegedly failed a voice-stress test, her employer also withheld those test results from her.

Based on the evidence presented, we hold that the Board could not reasonably conclude that Jamesia accepted money from the inmate. Therefore, we reverse the Board's finding that Jamesia was discharged for misconduct in connection with the work, and we remand for an award of benefits.

Reversed and remanded.

GRUBER and WOOD, JJ., agree.