SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION III
No. E–14–507

| | |
|---|---|
| PATRICIA HERNANDEZ<br>APPELLANT<br><br>V.<br><br>DIRECTOR, DEPARTMENT OF<br>WORKFORCE SERVICES, AND<br>SIMMONS FOODS, INC.<br>APPELLEES | Opinion Delivered May 6, 2015<br><br>APPEAL FROM THE ARKANSAS<br>BOARD OF REVIEW<br>[NO. 2014-BR-01066]<br><br>AFFIRMED |

**RAYMOND R. ABRAMSON, Judge**

Patricia Hernandez appeals the Arkansas Board of Review's (Board) decision to deny her unemployment benefits. On appeal, Hernandez argues that the Board did not apply the current version of Arkansas Code Annotated section 11-10-514(a)(2) in making its finding and that substantial evidence did not support the Board's conclusion. Based on our standard of review, we affirm the denial of benefits.

Hernandez began working in production at Simmons Foods, Inc. (Simmons) on March 23, 2013. She was discharged on February 10, 2014. The Department of Workforce Services (Department) issued a "Notice of Agency Determination" to the parties on March 6, 2014, denying Hernandez benefits under Arkansas Code Annotated section 11-10-514(a) upon finding that she was discharged from last work for misconduct in connection with the work. Hernandez filed a timely appeal to the Appeal Tribunal, which conducted a telephone hearing on April 10, 2014, and affirmed the Department's determination. Hernandez then

SLIP OPINION

appealed to the Board from the decision of the Appeal Tribunal. The Board, pursuant to section 11-10-514(a), found that Hernandez was discharged for misconduct and was therefore disqualified from benefits. The matter is now before this court.

Hernandez worked for Simmons for approximately ten months. Mary Doyle, Human Resources Director at Simmons, testified that the employer's policy provided that employees who accumulated at least ten attendance points per year may be discharged, and that three consecutive days of absence without notification would result in termination of employment. Over the course of those ten months, Hernandez accumulated twenty-six and a half points based on her absences from work. Hernandez did not call or come in to work on February 6, 7, 8, or 10, 2014; she was terminated on February 10th for excessive absences and three days of not calling in or coming to work.

During her testimony, Doyle indicated that Hernandez received a copy of Simmons's attendance point policy in Spanish. Doyle also stated that Hernandez was told during orientation about the policy regarding absences without notification, but she was not given a hard copy of the policy. According to Doyle, the no call/no show policy appears on two different slides that are shown at orientation.

Doyle also testified that Simmons normally gives employees written warnings when they reach four, six, eight, and ten points. Hernandez was given only one written warning—when she had accumulated six and a half points. Doyle testified that she and her supervisor held several meetings with Hernandez concerning her attendance and that Hernandez was allowed to exceed the ten-point maximum because she promised she would

bring in doctors' notes. Over the course of Hernandez's employment and despite her numerous absences, Doyle received only one doctor's note from Hernandez, which was in August 2013. Doyle testified that the decision to terminate Hernandez was made by her superior, the Human Relations Complex Manager, and that even if Hernandez had brought in all of her doctors' notes as she had promised, she would still have been discharged because she failed to call in for three consecutive days prior to her termination.

Hernandez argues that the Board was required to apply the language of Arkansas Code Annotated section 11–10–514(a)(2), which was in effect in 2014, the date of her discharge. She asserts that the Board's decision to deny benefits on an earlier version of the statute was an error of law. Therefore, she maintains that the Board's conclusions of law are incorrect. Arkansas Code Annotated section 11–10–514 states, in pertinent part:

> (a)(1) If so found by the Director of the Department of Workforce Services, an individual shall be disqualified for benefits if he or she is discharged from his or her last work for misconduct in connection with the work.
> (2) In cases of discharge for absenteeism, the individual shall be disqualified for misconduct in connection with the work if the discharge was pursuant to the terms of a bona fide written attendance policy, regardless of whether the policy is a fault or no-fault policy.
> (3)(A) Misconduct in connection with the work includes the violation of any behavioral policies of the employer as distinguished from deficiencies in meeting production standards or accomplishing job duties, and
> (B) Without limitation:
> (i) Disregard of an established bona fide written rule known to the employee; or
> (ii) A willful disregard of the employer's interest.

Ark. Code Ann. § 11–10–514 (Supp. 2013).

Hernandez argues that the Board, in its decision, cited an obsolete code when it wrote, "The claimant could still be denied benefits under Ark. Code Ann. § 11–10–514(a) if the claimant's attendance record for twelve month period immediately preceding the discharge and the reasons for absenteeism amounted to misconduct." She asserts that there was no such language or inquiry under the amended version of the code, which was in effect at the time she was discharged in 2014. While that may be correct, it does not invalidate the Board's conclusions of law.

First, the Board does, in fact, cite to the language that Hernandez attests it should have referenced by citing "in cases of discharge for absenteeism, the individual will be disqualified if the discharge was pursuant to the terms of a bona fide written attendance policy regardless of whether the policy is a fault or no-fault policy, pursuant to Ark. Code Ann. § 11–10–514(a)(2)." The Board noted that, while the employer had a bona fide written attendance policy, the employer did not follow its policy in the instant case. Here, Hernandez was allowed to accumulate twenty-six and a half points, and she was not given four written warnings pursuant to the policy. The Board did not, as Hernandez contends, base its decision to deny benefits on an earlier version of the statute. While the decision does reference the claimant's attendance record for the twelve-month period immediately preceding the discharge, the Board does not rely solely on that language as the basis for its decision.

Hernandez argues that the statute should be strictly construed and because Simmons did not follow its own attendance policy, then no misconduct existed. Appellee responds that if this argument were correct, it would lead to an absurd result since the only way unemployment benefits could be denied for attendance issues would be if the employer had a written policy. Our supreme court has held that "this court will not give statutes a literal interpretation if it leads to absurd consequences that are contrary to legislative intent." *Mamo Transp., Inc. v. Williams*, 375 Ark. 97, 100, 289 S.W.3d 79, 83 (2008). Appellee is correct in its analysis: "It only stands to reason that if the employer has no written policy or fails to follow its written policy then the facts must be evaluated as to whether Hernandez's behavior was a willful disregard of the employer's interests."

On appeal, the Board's findings of fact are reviewed in the light most favorable to the prevailing party, and the Board's decision is reversed only when the findings are not supported by substantial evidence. *Occhuzzo v. Dir., Dep't of Workforce Servs.*, 2012 Ark. App. 117. Our court has long held that, in order for an employee's actions to constitute "misconduct" so as to disqualify him or her, the action must be a deliberate or willful disregard of the employer's best interest or a disregard of a standard of behavior, which the employer has a right to expect of its employees. *Exson v. Everett*, 9 Ark. App. 177, 656 S.W.2d 711 (1983). Further, it is well settled that we have interpreted misconduct, as that term is used in the statute, to include (1) disregard of the employer's interests, (2) violation of the employer's rules, (3) disregard of the standards of behavior which the employer has a

SLIP OPINION

right to expect of his employees, and (4) disregard of the employee's duties and obligations to his employer. *Nibco, Inc. v. Metcalf*, 1 Ark. App. 114, 118, 613 S.W.2d 612, 614 (1981).

Here, Hernandez's absences were in disregard of the employer's interests and thus amounted to misconduct in connection with the work. She accumulated twenty-six and a half points for absences—sixteen and a half points more than was normally allowed. Hernandez also missed three consecutive days, just prior to her termination, with no call in or explanation. Whether an employee's actions constitute misconduct that justifies the denial of unemployment benefits is a question of fact for the Board to decide. *Garrett v. Dir., Dep't of Workforce Servs.*, 2014 Ark. 50.

The record in this case is clear. Hernandez's continued absences and no-shows were in disregard of her duties and obligations to Simmons; as such, the Board was correct in disqualifying her from receiving unemployment benefits. When a Board decision is appealed to this court, the findings of the Board are conclusive if supported by substantial evidence. *Mamo, supra.* Substantial evidence is relevant evidence that reasonable minds might accept as adequate to support a conclusion. *Jones v. Dir., Dep't of Workforce Servs.*, 2014 Ark. App. 426. Even if the evidence could support a different decision, our scope of review is limited to whether the Board could have reasonably reached its decision based on the evidence presented. *Id.* We conclude that reasonable minds could have reached the same decision as that of the Board of Review; therefore, there is substantial evidence to support the Board's decision.

Affirmed.

GLADWIN, C.J., and HARRISON, J., agree.

*Mary E. Goff*, Legal Aid of Arkansas, Inc., for appellant.

*Phyllis A. Edwards*, for appellee.