Cite as 2025 Ark. App. 380

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. E-24-240

| | |
|---|---|
| ARKANSAS FAMILY SUPPORTS, INC.<br>APPELLANT<br><br>V.<br><br>DIRECTOR, DIVISION OF<br>WORKFORCE SERVICES; AND<br>CHRISTIE WHITE<br>APPELLEES | Opinion Delivered June 4, 2025<br><br>APPEAL FROM THE ARKANSAS<br>BOARD OF REVIEW<br>[NO. 2024-BR-01070]<br><br><br><br>AFFIRMED |

**CINDY GRACE THYER, Judge**

Arkansas Family Supports, Inc. ("AFS"), appeals the decision of the Arkansas Board of Review ("the Board") determining that Christie White was eligible for unemployment benefits. On appeal, AFS argues that the Board erred in finding that White was discharged from last work for reasons other than misconduct in connection with the work.

White began working as a direct support professional supervisor for AFS on August 24, 2021. AFS terminated White on July 23, 2024, for alleged misconduct, and she applied for unemployment benefits on July 29. The Division of Workforce Services ("the Division") issued a notice of agency determination on September 25 finding that White was eligible to receive benefits because AFS failed to present sufficient evidence that she had been

terminated for misconduct under Arkansas Code Annotated section 11-10-514(a) (Repl. 2012).

AFS appealed the Division's decision to the Arkansas Appeal Tribunal ("the Tribunal"). The Tribunal held a telephone hearing regarding AFS's appeal on November 5, 2024, at which White and Sam Clayton, the director of human resources at AFS, testified. According to Clayton, White had received multiple verbal and written warnings before her termination. A written warning from April 2022 involved White's improperly rescheduling direct support professionals ("DSPs") and their caseloads. This warning was followed by a verbal warning in August 2022 after she spoke to a DSP in an unprofessional manner; at that time, White admitted her behavior and apologized for her actions. White received another verbal warning in May 2024 after she did not act in a reasonable time to investigate a concern regarding an AFS member.

Clayton testified that White was fired after AFS received complaints about her behavior at a training seminar in July 2024. Coworkers reported that White complained about not being paid to attend the seminar and asserted that upper management treated workers unfairly. White also made negative comments about coworkers and said that it was the supervisors who needed to attend the training. White called out another coworker as "dead weight" who dragged the team down. Other reports were that White had her back to the speaker at one point, went outside to get a cushion to sit on, and sat with her feet up on another chair during the training. At a subsequent staff meeting to discuss what had happened at the training, White denied behaving unprofessionally. Following that meeting,

Clayton and other supervisors decided to "pursue employee separation with [White] based on this incident and past performance and conduct issues." Clayton testified at the hearing before the Tribunal that White's termination was "[the] totality of events that took place from [her] initial hire up to that last training in July. . . . [I]t was a collection of all of those things that [caused] her [to] be seen as stirring up negativity and--and not following directives of the director of the program's department."

During her testimony, White addressed the warnings she received from her employer. Regarding the allegations that she made negative comments about upper management at July 2024 seminar, she said she actually commented that she wished a supervisor could have come for team-building purposes. White suggested that this was the statement that probably angered her manager to the point of wanting to fire her.

White's performance evaluations were also introduced into the record before the Tribunal. Each of the evaluations--dated December 2021, November 2023, and March 2024--reflected that White "meets standards" in every category assessed. While there were comments about some negative aspects of her job performance, the evaluations also commented that White "cares greatly about her members and staff," "has a wealth of experience and job knowledge," and "has developed and maintains a healthy working relationship with all outside . . . providers."

Following the hearing, the Tribunal entered a decision reversing the Division's determination that White was entitled to benefits. The Tribunal reasoned that although White received progressive coaching about her job duties and performance, she did not

improve. The Tribunal cited the negative complaints about White stemming from the July 2024 training and concluded that White was discharged from last work for misconduct in connection with the work.

White timely appealed the Tribunal's decision to the Board, which reversed the Tribunal's denial of benefits. The Board acknowledged White's verbal and written disciplinary actions but also pointed out her "generally favorable" performance evaluations, including the March 2024 evaluation that concluded she had met all ten performance standards only four months before her termination. The Board acknowledged that White "engaged in conduct during training that was unsatisfactory to her employer" but determined that the "proof is insufficient to find that [White] acted with intent to harm her employer's interests or violated known policies of her employer prior to discharge." The Board therefore concluded that White was discharged from last work for reasons other than misconduct in connection with the work. The Board reversed the Tribunal's decision and found that White was "allowed benefits if otherwise in compliance with the law." AFS timely appealed the Board's decision.

Our standard of review in unemployment-insurance cases is well settled. We do not conduct de novo reviews in appeals from the Board. *Dillinger v. Dir.*, 2020 Ark. App. 138, 596 S.W.3d 62. Instead, we review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board's findings of fact. *Rockin J Ranch, LLC v. Dir.*, 2015 Ark. App. 465, 469 S.W.3d 368. We accept the Board's findings of fact as conclusive if supported by substantial evidence, which is such relevant evidence that a

4

reasonable mind might accept as adequate to support a conclusion. *Id.* Even when there is evidence on which the Board might have reached a different decision, our scope of judicial review is limited to a determination of whether the Board could have reasonably reached the decision rendered on the basis of the evidence presented. *Keener v. Dir.*, 2021 Ark. App. 88, 618 S.W.3d 446. We defer credibility calls to the Board as the finder of fact as well as the weight to be accorded to testimony presented to the Board. *Daniels v. Dir.*, 2023 Ark. App. 32, 660 S.W.3d 320.

Arkansas Code Annotated section 11-10-514(a)(1) provides that "an individual shall be disqualified from receiving unemployment benefits if he or she is discharged from his or her last work for misconduct in connection with the work." Misconduct in connection with the work includes the violation of any behavioral policies of the employer, as distinguished from deficiencies in meeting production standards or accomplishing job duties. Ark. Code Ann. § 11-10-514(a)(3)(A). This includes, without limitation, disregard of an established bona fide written rule known to the employee or a willful disregard of the employer's interest. Ark. Code Ann. § 11-10-514(a)(3)(B)(i)–(ii).

Mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies, ordinary negligence in isolated instances, or good-faith errors in judgment or discretion do not rise to the level of misconduct. *City of Fort Smith v. Dir.*, 2024 Ark. App. 606, 704 S.W.3d 143. There must be an intentional or deliberate violation, a willful or wanton disregard, or carelessness or negligence of such degree or recurrence as to manifest wrongful intent or evil design. *See also Bright v. Dir.*, 2021 Ark. App.

5

217, at 3, 625 S.W.3d 720, 722 ("There is an element of intent associated with a determination of misconduct."). It is the employer's burden to establish misconduct by a preponderance of the evidence. *Hopkins v. Dir.*, 2019 Ark. App. 84, 571 S.W.3d 524. Whether an employee's behavior is misconduct that justifies the denial of unemployment benefits is a question of fact for the Board to decide. *Id.*

On appeal, AFS argues that the Board erred in finding that White was discharged for reasons other than misconduct associated with the work. AFS argues that the record shows that White received progressive discipline regarding her job duties and engaged in misconduct. It cites her "negative remarks to others in training" and asserts those negative remarks to third parties "constitute a willful disregard of [her] employer's interest." It further points to her behavior at the training seminar, including facing the wall away from the speaker and putting her feet up on a chair. It complains that she had a history of "stirring up negativity" and "making the workplace a toxic environment."

Citing *Stark v. Director*, 2024 Ark. App. 86, 684 S.W.3d 323, AFS asserts that White "refused to engage in progressive coaching by refusing to sign the employee discipline forms." In *Stark*, this court held that an employee's failure to attend a disciplinary meeting can constitute misconduct. In that case, however, Stark had been told she would be fired if she refused to attend the meeting, although Stark herself denied being given such an ultimatum. This court affirmed the Board's denial of unemployment benefits, noting that the resolution of inconsistent testimony is a matter for the Board. *Stark*, 2024 Ark. App. 86, at 9, 684 S.W.3d at 329.

6

More analogous is *Follett v. Director*, 2017 Ark. App. 505, 530 S.W.3d 884, in which this court reversed a finding of misconduct for refusal to sign a reprimand when there was no policy against refusing to do so, and the employee was never warned that her refusal would result in disciplinary action. AFS does not point to any testimony that would support a conclusion that White was aware of a company policy that refusing to sign a reprimand would constitute misconduct.

The Board responds to AFS's arguments by pointing out that, although there was evidence that White received disciplinary actions, she also received positive job-performance evaluations in 2023 and 2024, and one of those positive evaluations occurred after two of the earlier disciplinary actions. The Board notes that her disciplinary actions--which involved scheduling issues, her handling of a dispute between two other employees, and her failure to promptly investigate a complaint--"appear to be based on inefficiencies, or ordinary negligence" and not on any malicious conduct on her part. Finally, the Board notes that the statements of other employees regarding White's conduct at the training seminar were conflicting, with some of the witness statements indicating that her conduct was not as egregious as AFS had alleged.

We agree with the Board. We acknowledge that there was evidence tending to show that White engaged in unsatisfactory conduct and that her employer was clearly unhappy with her behavior. Mere unsatisfactory conduct, however, if not of such a degree or recurrence as to manifest "wrongful intent, evil design, or an intentional disregard of the employer's interest," is not considered misconduct. *City of Fort Smith*, *supra*. The Board's

7

decision that White did not engage in misconduct is therefore supportable on the evidence before it. The Board resolved conflicting evidence and testimony in favor of White, and AFS's arguments essentially consist of a request for this court to reweigh the evidence in its favor, which we will not do. *See Broom v. Dir.*, 2022 Ark. App. 305. We therefore affirm the Board's decision.

Affirmed.

ABRAMSON and HIXSON, JJ., agree.

*Robertson, Beasley, Shipley & Robinson, PLLC*, by: *Christopher J. Hooks*, for appellant.

*Cynthia L. Uhrynowycz*, Associate General Counsel, for separate appellee Director, Division of Workforce Services.